[Cite as *Muccio v. Barry*, 2012-Ohio-6327.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PATRICK MUCCIO

    Plaintiff

    v.

SEAN C. BARRY

    Defendant/Third-Party Plaintiff

    v.

MIAMI UNIVERSITY

    Third-Party Defendant

Case No. 2011-03251-PR

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} On June 22, 2012, plaintiff, with leave of court, filed a motion for partial summary judgment. On July 30, 2012, defendant/third-party plaintiff, Sean C. Barry (Barry), filed a memorandum in opposition.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit County*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Both plaintiff and Barry were members of the Miami University Glee Club, a volunteer student organization for which the participants received school credit. In 2009, the Glee Club embarked on a winter tour which consisted of performances in several cities. On January 6, 2009, the Glee Club performed at a church in Cleveland, Ohio. Following the performance, the club members were shuttled to a nearby "host home" by a chartered bus and several passenger vans. The Glee Club members spent the night at the host home and then departed for the next concert venue in Buffalo, New York.

{¶ 5} In his answer, Barry admitted the following allegations of the complaint:

{¶ 6} "13.    After an initial performance by the Glee Club in Cleveland the previous evening, on January 6, 2009 at approximately 9:00 a.m. the caravan of student/members left Cleveland for Buffalo, New York.

{¶ 7} "14.    Defendant Barry was the driver of one (1) of the five (5) vans to be driven from Cleveland to Buffalo. Plaintiff Patrick Muccio was amongst eight (8) passengers in that van.

{¶ 8} "15.    Approximately, one-and-a-half (1 1/2*)* hours into the drive, defendant Sean C. Barry fell asleep at the wheel and caused the van to drift toward the median.

{¶ 9} "16.    Upon drifting into the median, * * * the van * * * rolled * * * until it came to rest onto its roof."  (Plaintiff's complaint.)

{¶ 10} In his deposition, Barry testified as follows:

{¶ 11} "Q.    And tell us what happened during that accident.

{¶ 12} "A.    I fell asleep behind the wheel and we were the only vehicle involved.

{¶ 13} "Q.    Okay.  At any point did you wake up during the crash?

{¶ 14} "A.    Yes.

{¶ 15} "Q.    Okay. Why don't you tell us in detail what happened.

{¶ 16} "A.     I woke up and the van was in the center median driving on grass, and I corrected the vehicle to drive back up on the road, drove across however many lanes there were to the other side of the road, and as I corrected again back to the left, the van flipped.

{¶ 17} "Q.    Okay.  So if I understand it correctly, you woke up to find yourself in the left median; is that correct?

{¶ 18} "A.    Yes.

{¶ 19} "Q.    And then you had corrected it and the van went over the lanes of traffic?

{¶ 20} "A.    Yes.

{¶ 21} "Q.    Okay.  And then you tried to correct again, and then you ended up on the other side of the interstate?

{¶ 22} "A.    I don't know where we ended up."  (Deposition Transcript, Page 30, Line 10 - Page 31, Line 11.)

{¶ 23} "* * *

{¶ 24} "Q.    Do you take full responsibility for the accident?

{¶ 25} "A.    Yes.

{¶ 26} "Q.    Would you say that there's anyone else to blame student-wise with regards to this accident?

{¶ 27} "A.    No.

{¶ 28} "Q.    Do you feel as if Miami University should have provided you with some form of training prior to operation of this van?

{¶ 29} "A.    I don't know.  I'm not sure."  (Deposition Transcript, Page 36, Line 21 - Page 37, Line 6.)

**{¶ 30}** Barry was subsequently convicted of careless driving under Pennsylvania law. There are no exculpating facts which would excuse such conduct or otherwise relieve Barry from liability to plaintiff.[1] In spite of Barry's protestations to the contrary, the only reasonable inference to draw from Barry's answer and from his deposition testimony is that Barry was negligent and that such negligence was the proximate cause of plaintiff's harm. Indeed, plaintiff maintains that Barry's violation of Pennsylvania traffic law requires a finding of negligence *per se.* However, having determined that the only reasonable conclusion to reach upon the evidence is that Barry was negligent, it matters not whether such negligence arises out of statutory or common law.

**{¶ 31}** For similar reasons, Barry's insistence that his deposition testimony is not to be interpreted as an admission of legal liability is also of no consequence. As stated above, the only permissible inference to be drawn from the evidence is that Barry was negligent and that his negligence was the proximate cause of plaintiff's harm. Barry's own opinion as to his legal culpability does not change the undisputed facts.

**{¶ 32}** Barry argues, in the alternative, that the court cannot grant plaintiff's motion for summary judgment where there are factual issues regarding negligent training. Barry contends that the trier of fact could find that the negligence of third-party defendant, Miami University (Miami), was an intervening and superseding cause of plaintiff's harm. The court disagrees.

---

[1]Under Pennsylvania law, "[f]or a driver to sleep at the wheel of a moving automobile makes him prima facie guilty of negligence. If there are any facts which under the circumstances tend to exculpate him from the charge of negligence, the burden of producing them is upon him." *Bernosky v. Greff,* 350 Pa. 59, 61 (1944). "It is impossible to fathom how one who falls asleep while operating an automobile, thus blindly propelling thousands of pounds of steel and glass at tens of miles per hour, cannot be guilty of a degree of negligence beyond mere 'absence of ordinary care.'" *Commonwealth v. Cathey*, 435 Pa. Super. 162 (1994) (applying 75 Pa.Consolidated Stat. 3714).

Under Ohio law, "[t]he authorities are quite uniform upon the proposition that the fact that a driver went to sleep while driving an automobile creates an inference of negligence sufficient to make out a *prima facie* case, and sufficient for a recovery of damages by one injured as a result thereof, if no circumstances tending to excuse or justify his conduct are proven." *Collins v. McClure*, 143 Ohio St. 569

{¶ 33} In *Berdyck v. Shinde*, 66 Ohio St.3d 573 (1993), the Ohio Supreme Court discussed the law on the subject as follows:

{¶ 34} "The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proximately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. * * *

{¶ 35} "In order to relieve a party of liability, a break in the chain of causation must take place.  A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard.  However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." (Citations omitted.)  *Id.* at 584-585.

{¶ 36} By contrast, "'[c]oncurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury.'"  *Id.* at 584, quoting *Garbe v. Halloran,* 150 Ohio St. 476 (1948).

{¶ 37} Even if the court were to assume that Miami failed to properly train Barry, there is no question that Miami's negligence, if any, merely combined with the negligence of Barry to produce plaintiff's harm.  Negligent training alone could not have produced plaintiff's harm in this case.  Rather, it was the subsequent careless driving of Barry that produced the injury.  Thus, no reasonable trier of fact could find that the alleged actions or omissions of Miami were either an intervening or superseding cause of plaintiff's harm.

---

(1944).  "Falling asleep at the wheel is not exercising due care but is a total absence of any care."  *F.E. Avery Co. v. George*, 10th Dist. No. 6034 (Apr. 14, 1959).

**{¶ 38}** Based upon the foregoing, plaintiff's motion for partial summary judgment shall be granted.

**{¶ 39}** Further, the court is aware that the liability issue raised by Barry's third-party complaint against Miami for indemnity is whether, pursuant to R.C. 2743.16(B), plaintiff suffered loss to person or property while Barry was engaged in the course and scope of his employment with Miami. Additionally, the issue with regard to Barry's claim against Miami for contribution is whether Miami breached a duty to adequately train Barry.[2] Both of these liability issues will be tried to the court, without a jury, and both issues should be decided in advance of the jury trial. Indeed, a determination of the remaining liability issues in advance of the jury trial on damages will help simplify the presentation of the case to the jury and avoid confusion of the issues. Accordingly, the jury trial scheduled for *October 29-November 2, 2012*, *at 10:00 a.m.,* shall be converted to a trial to the court on the liability issue raised in the third-party complaint. A jury trial on the issue of damages shall be scheduled thereafter.

---

[2]Plaintiff's original action against Miami, Ct. of Claims Case No. 2010-13091, does not allege negligent training.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PATRICK MUCCIO

Plaintiff

v.

SEAN C. BARRY

Defendant/Third-Party Plaintiff

v.

MIAMI UNIVERSITY

Third-Party Defendant

Case No. 2011-03251-PR

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶ 40} A non-oral hearing was conducted in this case upon plaintiff's motion for partial summary judgment. For the reasons set forth in the decision filed concurrently herewith, plaintiff's motion for partial summary judgment is GRANTED and judgment is rendered in favor of plaintiff in an amount to be determined.

Case No. 2011-03251-PR          - 2 -          JUDGMENT ENTRY

{¶ 41} The jury trial scheduled for *October 29-November 2, 2012, at 10:00 a.m.,* is converted to a trial to the court on the liability issue raised in the third-party complaint. A jury trial on the issue of damages shall be scheduled thereafter.

_____
CLARK B. WEAVER SR.
Judge


cc:


Aaron M. Shank
Jared M. Klaus
41 South High Street, 29th Floor
Columbus, Ohio 43215-6194

Adam E. Crowell
Adam P. Richards
Bradley A. Strickling
Charles H. Cooper Jr.
Rex H. Elliott
2175 Riverside Drive
Columbus, Ohio 43221


Amy S. Brown
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Elizabeth L. Moyo
41 South High Street, 29th Floor
Columbus, Ohio 43215


Marshall W. Guerin
2545 Farmers Drive, Suite 370
Columbus, Ohio 43235

006
Filed August 23, 2012
To S.C. Reporter January 17, 2013