J-S94034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOHN D. NARDONE | No. 1199 MDA 2016 |

Appeal from the Order Entered June 3, 2016
in the Court of Common Pleas of Wyoming County Criminal Division
at No(s): CP-66-CR-0000023-2015

BEFORE: LAZARUS, RANSOM, AND FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED JANUARY 30, 2017**

The Commonwealth appeals from the order entered in the Wyoming County Court of Common Pleas granting Appellee John D. Nardone's omnibus pretrial motion to suppress based upon the lack of probable cause to stop Appellee for Vehicle Code violations. The Commonwealth contends that the police had probable cause to stop Appellee because they had specific articulable facts that he violated the Vehicle Code. We affirm.

The trial court summarized the facts and the procedural posture of this case as follows:

> On August 2, 2014, when there were no adverse weather condition[s], at approximately 10:33 p.m. Tunkhannock Township Police Officers, Corey Sidorek and John Zdaniewicz . . . were on a routine patrol in a marked

---

[*] Former Justice specially assigned to the Superior Court.

police cruiser traveling south on Pennsylvania Route 307 from Tunkhannock Township through Overfield Township, Wyoming County, Pennsylvania. Route 307 is a two (2) lane roadway with a double yellow center line and a posted speed limit of forty (40) miles per hour.

As the officers were approaching a left curve in the road with a posted maximum safe advisory speed of thirty (30) miles per hour, [Appellee] was travelling northbound. Officer Sidorek was travelling at a speed of approximately forty five (45) to fifty (50) miles per hour with his high beams activated. As Officer Sidorek's cruiser approached [Appellee], Officer Sidorek testified that although [Appellee's] vehicle was not traveling too fast for conditions or speeding, he "was coming into our lane." Sidorek further testified that [Appellee's] vehicle was driving towards him and that Sidorek felt his cruiser was going to be struck. Despite this testimony, however, neither Officer reported observing any erratic movement or weaving of [Appellee's] vehicle.

As a result, the Officers made a u-turn, activated the cruiser's overhead lights and proceeded to and did conduct a traffic stop of [Appellee] detaining him for violations of 75 [Pa.C.S.] § 3309(1), Driving on Roadways Laned for Traffic and 75 [Pa.C.S.] § 3714(a), Careless Driving.

During the course of the traffic stop the Officers questioned and elicited statements from [Appellee] and had him submit to three (3) standard field sobriety tests. [Appellee] was taken into custody and transported to Tyler Memorial Hospital where blood was drawn from him for purposes of conducting a consented to Blood Alcohol Content (BAC) test. Based upon this chemical test, [Appellee] had a BAC of 0.175%.

Officer Sidorek's police cruiser was equipped with a dash cam video system[1] that records the movement of

_____

[1] The certified record transmitted on appeal did not initially include the dash cam video of the vehicle stop. Upon informal inquiry by this Court, the trial court provided the dash cam video. We remind counsel the appellant bears the burden of "ensur[ing] the record certified on appeal is complete in the

- 2 -

the cruiser, including date, time, location, speed, geographic terrain and events appearing before the cruiser.

[Appellee] was charged with two (2) counts of Driving Under the Influence of Alcohol (hereinafter "DUI") or a Controlled Substance, General Impairment and Highest rate of Alcohol (First Offense), 75 [Pa.C.S.] § 3802(a)(1), (c). [Appellee] was also charged with two (2) non-DUI motor vehicle traffic violations—Driving on Roadway Laned for Traffic, 75 [Pa.C.S.] § 3309(1), and Careless Driving, 75 [Pa.C.S. §] 3714(a). On or about March 26, 2015, [Appellee] filed a Pretrial Omnibus Motion. Thereafter, on or about October 9, 2015 [Appellee] filed Supplemental Reasons supporting his Pretrial Motion to Suppress. [Appellee] again filed Supplemental Reasons in Support of [Appellee's] Omnibus Pretrial Motion on January 8, 2016, specifically seeking to suppress the chemical test of his blood, to dismiss Count II of the Information[2] and asserting that Pennsylvania's Implied Consent statute violates the Fourth Amendment Warrant Clause. A hearing was held thereon on January 15, 2016 and continued on March 11, 2016 . . . .

Trial Ct. Op., 6/3/16, at 1-2 (unpaginated) (citations omitted).

Officer Sidorek testified to the following at the January 15, 2016

omnibus pretrial motions hearing:

[Appellee's Counsel]: . . . Officer, I'm going to show you what has been marked for identification as defense exhibit number one and I would have you take a look at that. Would you agree with me that those are snapshots of the video of the night in question that was presented at the preliminary hearing in this matter?

_____

sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*) (citation omitted).

[2] Count II of the information was DUI, 75 Pa.C.S. § 3802(c).

A: I'd agree with you that these are from that night.

Q: I'd like you to take a look first at the second page, I believe.

\* \* \*

And that shows [Appellee's] vehicle approaching your vehicle. Is that correct?

A: That's correct.

Q: OK, up on the top, there's a time recording. Do you see that?

A: 22:33:35.

Q: I want you to go to the first page. The first page shows [Appellee's] vehicle next to the police cruiser. Is that correct?

A: Correct.

Q: And what is the time showing on the top of that snapshot?

A: 22:33:36.

Q: A matter of one second.

A: Correct. . . .

\* \* \*

Q: You would agree that, in observing [Appellee's] vehicle, at no time did you see it weaving, correct?

\* \* \*

My question, though, is, you didn't see it weaving at all, did you?

A: No.

* * *

Q: Would you agree with me, based upon your observations of [Appellee's] vehicle, that he was not speeding at the time?

A: I would agree with that, too.

* * *

Q: OK, for all you know, [Appellee's] vehicle could have moved up to the center line and not even crossed onto the center line. Isn't that correct?

A: That's a possibility.

Q: So he could have stayed fully within his lane at that point in time. Isn't that correct?

A: Possibly.

* * *

Q: All you know is—for the sake of my questioning, you do not know if [Appellee's] vehicle ever left his lane of travel. Isn't that correct?

A: Correct.

* * *

Q: . . . After you passed [Appellee's] vehicle, your overheard [sic] lights were activated. Is that correct?

A: Yes.

Q: And you proceeded to try and catch up to [Appellee]. Is that correct?

A: Correct.

Q: And when you caught up to [Appellee] his vehicle had already been pulled to the side of the road. Is that correct?

A: Correct.

Q: And when you pulled up to his vehicle, your lights were still activated. Is that correct?

A: Correct.

Q: You're in uniform. Is that correct?

A: Correct.

R.R. at 22-23, 25-27, 29-30.[3]

At the March 11, 2016 hearing, Appellee challenged the vehicle stop on the basis that there was no probable cause. R.R. at 46. A stipulation was entered into the record. R.R. at 102. Counsel for the Commonwealth and Appellee stipulated to the following facts:

1. John Zdaniewicz and Sidorek are municipal police officers employed by Tunkhannock Twp., Wyoming County, Pa.

\* \* \*

3. On August 2, 2014, at approximately 10:36 p.m. the officers were on duty, in full uniform in a marked patrol car traveling southbound on SR 307 from Tunkhannock Twp. to Falls Township.

4. SR 307 is a two lane highway with a double yellow center line.

---

[3] For the parties' convenience, we refer to the reproduced record where applicable.

5. While en route to Falls Township, the officers traveled through Overfield Township (Wyoming County) at which time they observed a vehicle traveling toward them in the northbound or opposite lane.

6. As the vehicle approached them, Ptlmn. Zdaniewicz observed the left driver side wheels of the vehicle momentarily cross onto but not over the double yellow centerline of the highway.

7. Ptlmn. Zdaniewicz could not estimate the speed of the vehicle.

8. Ptlmn. Zdaniewicz testified at the preliminary hearing that the vehicle was not traveling at a speed that was unsafe for the conditions at the time.

9. The vehicle was being operated by [Appellee].

10. The officers immediately turned around, activated the vehicle's overhead lights and pursued [Appellee's] vehicle to conduct a traffic stop.

11. [Appellee] had pulled his vehicle off to the side of the roadway and was stopped when the officers pulled their patrol car, with overhead lights activated, directly behind [Appellee's] vehicle.

12. Ptlmn. Zdaniewicz testified at the preliminary hearing that he observed [Appellee] exiting from the driver side of his vehicle.

13. Officer Zdaniewicz exited the patrol car and approached [Appellee].

* * *

15. Based upon his investigation, Officer Zdaniewicz placed [Appellee] under arrest on suspicion of driving under the influence of alcohol or a controlled substance.

R.R. at 5-6.

On June 3, 2016, the trial court granted Appellee's omnibus pretrial motion to suppress the evidence of the results of the administration of the Horizontal Gaze Nystagmus test. Appellee's motion to determine whether Pennsylvania's Implied Consent statute violated the Fourth Amendment Warrant Clause was denied as moot. On June 30, 2016, the Commonwealth filed a notice of appeal. On the same date, the Commonwealth filed an amended notice of appeal, certifying that the order appealed from will terminate or substantially handicap the prosecution.[4] The Commonwealth filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

The Commonwealth raises the following issue for our review: "Whether the traffic stop of [Appellee's] vehicle was supported by probable cause?" Commonwealth's Brief at 4. The Commonwealth contends that

> [t]he trial court erred and abused its discretion by elevating probable cause to a standard higher than what it

---

[4] In ***Commonwealth v. Bender***, 811 A.2d 1016 (Pa. Super. 2002), this Court noted

> that the Commonwealth has an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order. Such an appeal is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution.

***Id.*** at 1018 (quotation marks and citations omitted). Instantly, the Commonwealth has complied with this procedural requirement and, therefore, the appeal is properly before us.

is supposed to be. The trial court reached its conclusions based upon four factual findings: (1) Officer Zdaniewicz saw [Appellee's] left tires cross over but not over the double yellow centerline; (2) Officer Sidorek stated speed was not an issue; (3) Neither officer observed any erratic movement or weaving of [Appellee's] vehicle; and (4) the dash cam does not show [Appellee's] vehicle leaving the lane of travel.

\* \* \*

In this case, the police had probable cause[5] to stop [Appellee] because they had specific articulable facts that the Vehicle Code was violated. The police were traveling in their lane, along a gradual left curve. [Appellee] was in the opposite lane. The video, which is part of the record, appeared to show [Appellee] drive on, or just over, the double yellow line as he passed the police. The vehicles are in close proximity to each other. The police moved their car to the right to avoid [Appellee]. Both cars had their headlights on and it is reasonable to believe the police vehicle was easily seen. Patrolman Sidorek was a couple feet closer to [Appellee's] car from the position of the camera.

\* \* \*

Sidorek testified that as [Appellee] passed him, he believed [Appellee] crossed the yellow line. The officer's belief, even if mistaken, that [Appellee] crossed the line and drove carelessly was reasonable, as the video clearly proves. This was not an incident the officers concocted. They reasonably believed [that Appellee] violated the traffic code, and pursued him to make a stop.

Commonwealth's Brief at 7-9 (citations omitted).

Our review is governed by the following principles:

---

[5] The Commonwealth does not contest the fact that probable cause was required to stop Appellant's vehicle. *See* Commonwealth's Brief at 7-9.

> When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(citation omitted).

> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, **which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code**.

*Commonwealth v. Salter*, 121 A.3d 987, 992 (Pa. Super. 2015) (quotation marks and citation omitted).

Section 3309(1) of the Motor Vehicle Code provides:

> **(1) Driving within single lane.**—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(a). Section "3309(1) of the Vehicle Code requires motorists to maintain a single lane **as nearly as practicable**. Thus, the statutory language does not foreclose **minor deviations**."

- 10 -

***Commonwealth v. Enick***, 70 A.3d 843, 847 (Pa. Super. 2013) (quotation marks and citation omitted and emphases added).

Section 3714(a) provides:

> **(a) General rule.**—Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

75 Pa.C.S. § 3714(a). "The *mens rea* requirement applicable to § 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances."

***Commonwealth v. Gezovich***, 7 A.3d 300, 301 (Pa. Super. 2010) (quotation marks and citations omitted). Probable cause is required for a vehicle stop pursuant to Section 3714(a). ***Commonwealth v. Wilson***, 111 A.3d 747, 755 (Pa. Super. 2015), *appeal denied*, 128 A.3d 221 (Pa. 2015).

In ***Gezovich***, this Court opined:

> The Commonwealth's evidence in the case [ ] was brief. An accident occurred because [the a]ppellant was unable to stop her vehicle in time to avoid striking the rear of the automobile in front of her. It is well established that the mere occurrence of an accident does not prove negligence.
>
> Thus, the Commonwealth did not even establish the existence of ordinary negligence because it did not prove how the accident occurred; it was required to establish more than mere negligence and more than the mere absence of care in order to convict [the a]ppellant of careless driving. The fact that [the a]ppellant did not have sufficient time to stop does not mean that she was negligent. The driver of the vehicle that [the a]ppellant struck may have improperly left its lane of travel and pulled in front of her without leaving her sufficient room to stop. The vehicle in question may have abruptly stopped without warning. **There is no indication that [the**

>    **a]ppellant was speeding or looking away from the roadway**.  **The evidence simply does not establish ordinary, civil negligence much less a heightened type of carelessness necessary to sustain a conviction for careless driving.**  The Commonwealth failed to meet its burden of proof herein.

***Gezovich***, 7 A.3d at 302-03 (citations and footnote omitted) (emphases added).

In the instant case, the trial court opined:

>    Officer Zdaniewicz only observed the left driver side wheels of [Appellee's] vehicle momentarily cross over but not over the double yellow centerline.  Officer Sidorek admitted that [Appellee] was not speeding nor traveling to fast for conditions at the time.  Neither Officer reported observing any erratic movement or weaving of [Appellee's] vehicle.  The dash cam does not show [Appellee's] vehicle leaving its lane of travel.

>    Because the officer's [sic] did not have probable cause to stop [Appellee's] vehicle, any evidence pertaining to a Horizontal Gaze Nystagmus test and the results thereof must be suppressed.

Trial Ct. Op. at 3-4 (unpaginated).  We agree no relief is due.

In the case *sub judice*, the officers did not have probable cause to initiate a traffic stop based upon Section 3309(1) of the Code.  ***See Salter***, 121 A.3d at 992.  The trial court found that the video did not show Appellee's vehicle leaving its lane of travel.  ***See Enick***, 70 A.3d at 847.  The record did not establish probable cause to stop Appellee's vehicle pursuant to Section 3714(a).  ***See Wilson***, 111 A.3d at 755; ***Gezovich***, 7 A.3d at 302-03.  There was no evidence that Appellee was speeding or inattentive.  ***See Gezovich***, 7 A.3d at 302-03.  We discern no abuse of discretion or

error of law by the trial court. **_See Gutierrez_**, 36 A.3d at 1107.

Accordingly, we affirm the order of the trial court granting Appellee's motion

to suppress.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2017